Mr. Justice O’Neall
delivered the opinion of the court.
On examining this case, it seems to me, that it will be better understood by first stating, in a plain way, the facts necessary to a decision of the claim made by Sir James Roupel Colleton, and then the views of the court upon the case so made.
By the deed of the 23d of November, 1815, (commonly called the Bristol deed,) Admiral and Lady Graves, conveyed the Fair-lawn and Devil’s Elbow Baronies, to Pinckney and Tunno, in trust for such persons, and on such conditions, as Admiral Graves and wife, during their joint lives, should, by deed, direct and appoint, with a power of revocation and appointment of new trusts ; and until such joint direction, to the use of Richard Graves, and his assigns, for life ; then to Rutledge and Stapleton, for five hundred years ; and after, the expiration ot the five hundred years, and subject thereto, and to the trusts thereof, then to Samuel Colleton Graves, only son of Admiral and Lady Graves, for life, and after his death, to his heirs, male ; and in default of such, then to his heirs, female, with a power of appointing among the daughters; in default of this issue, then to the eldest daughter of Admiral and Lady Graves, Mrs. Radcliffe, for life, remainder in strict- settle, ment to her issue ; in the event of her death, without issue, the same provision, on the same condition, is made successively to each of the other daughters, and their issue, viz., Louisa Catherine *225 ¡Collcton Graves, (now Yandersmissen,) Séptima Sexta Colleton Graves, (afterwards Séptima Sexta Colleton Colleton,) and Olivia Séptima Colleton Graves. The term • of five hundred years is de* cltirtxi by the deed, to be upon the trust, that Rutledge and Staple» ton shall, immediately, upon the death of the survivor of them, the said Admiral Graves and wile, by demise, sale, Or mortgage of the Baronies, comprised in the-term of five hundred years, raise or borrow thirty thousand pounds, and dispose of it as follows, viz. Sitfi thousand pounds to Samuel C. Graves, and six thousand pounds to ®aeh of the daughters of Admiral Graves and wife, in such man* ner as they, by deed or will, shall appoint, and in default of such ■appointment, at their respective marriages, if after the death of ■Admiral and Lady Graves ; but if before, then, in three months af* ter the death of the survivor' of Admiral Graves and wife. Then, follows a provision to invest the tvventy.four thousand pounds, if the daughters should not be married at the death of such sürvivor ij or if no appointment had been made, until their portion^' became payable. The negro slavts upon the Baronies are conveyed upon the same trusts. On the 10th of May, 1817, this deed was revoked; on the 12th of July, of the same year, Admiral and Lady Graves conveyed the Baronies, in fee, to Samuel Colleton Graves.
Sir James Roupel Colleton, and Séptima Sexta Colleton Graves^ were married at the Hague, in December, 1819, and m a more formal way, at London, in February, 1820. Before their marriage, Admiral Graves represented to Sir James, that his daughter’s fortune, six thousand pounds, was secured by the deed of 1815. On the 23d of May, i 8s0, Admiral and Lady Graves executed a bond to Sir James and wife, for six thousand pounds, with interest-at five per cent, from the day of their marriage ; of which surft they, in the said bond, say “ being the amount of the fortune we promise to give our daughter, ¡séptima Sexta Colleton, as her fortune, or marriage portion, which is to arise out of,- and is now settled on, certain lands in the State of South Carolina, of the States of" the United States of North America, as is fully expressed by a deed of settlement, made some years previous,to the marriage of our said daughter, Séptima Sexta Colleton, and which deed reserved to ourselves the power of making such alterations, as we plight deem prudent during our joint lives ; but our said daughter* Séptima Sexta Colleton, beii-g now married with the aforesaid James Roupel Colleton, Bart,- we, the aibreviid Richard Graves, and Louisa Carolina, wife of the above named Richard Graves, do hereby give up that right of alteration, as expresen in U.e *226 aforesaid, or any other deed.” On the 3d of November, 1820, Admiral and Lady Graves, executed their bond to Sir James Xlou-pell Colleton and wife, in the penalty of twelve thousand pounds, conditioned.for the payriient of six thousand pounds, with interest at five per cent., on the 31st of October, 1821. On the 23d of Slay, 1821, Admiral and Lady Graves, m consideration of natural love and affection for their' children, conveyed to William Robertson, the slávés on Colleton Neck, upon the trusts, that Adntiírál and Lady Graves, should have the use, benefit, and profit, of the slaves, during life, and the life of the survivor; then to Samudl Colleton Graves, absolutely, on his paying seven thousand pounds t'o Mrs. Radcliffe, six thousand pounds to Mrs. Vandersmissen, six thousand pounds to Lady Colleton, and six thousand pounds to Olivia Colleton Graves; which said sums, to the said parties, were by the said deeds, declared to be payable a year and’ a day after the death of the said Admiral and Lady Graves, or the survivor of them. This deed contains the following provision : “ Hereby ratifying and confirming such securities and obligations, any of the daughters, aforesaid, may have" in part, or in" the whole, for the aforesaid sums, respectively granted to them, for which payments well and truly to. be made, the said slaves are rendered liable, as full and effectually, as if a mortgage for that purpose had been-specifically executed.”
Lady Graves is dead'; so is Lady Colleton. Admiral Graves is still alive. From May, 1814, Admiral Graves was much embarrassed'. Oh the 2d of May, 1814, he and his son, Samuel C. Graves, executed their penal bond of twelve thousand pounds, conditioned for the payment of six thousand pounds, with five per cent, interest, to Crawford Davidson, one of the complainants, which bond is unpaid, and is a part of the demands, embraced by the bill, in 1820 and 1821, Admiral Graves was hopelessly insolvent ; being compelled to abandon the soil of his birth, and live abroad, to avoid the claims of his creditors.
Sir James Roupell Colleton contends, that the deed of the 23d of May, 1821, is to have the effect of a mortgage, or alienation, for valuable consideration, of the slaves mentioned in it, to the amount of six thousand pounds, with the interest at five per cent', thereon' ; and is so far to be sustained and preferred to the claims of tile complainants, creditors of Admiral Graves, inasmuch as Admiral Graves’ bonds are to be regarded, either as given to satisfy a fraud committed by him, in representing to Sir James, before his mar. j-iage, that his daughter’s fortune was secured by (he deed of 1815, *227 which was then revoked ; or in consideration of a parol contract before marriage, to settle on her a portion of six thousand pounds.
Before examining the bearing and effect of these respective positions, I will remark, that if it was conceded that the bonds were executed, as a satisfaction of the fraud alleged to have been committed by Admiral Graves, upon the marital rights of Sir James, it would be difficult to conceive that they could be secured by the deed of 1821. For the provision of that deed speaks of securities in favor of the daughters, in part, or-in whole, for their marriage portions, and for their payment, gives the deed the effect of a mortgage. If the bonds were executed as a composition for the fraud, then they are not embraced by that provision. For they do not then answer to the description of the securities mentioned in it.
- But waiving this preliminary objection, and conceding that the bonds were executed as a satisfaction of the alleged fraud, and may be connected with the deed, it will be necessary to examiue, 1st — Whether, in point of fact, a fraud was committed by Admiral Graves, to satisfy which, he executed the bonds 1 2d — Conceding it tobe true, can the deed be sustained as against the complainants, creditors of Admiral Graves 1
1st. I speak of the bonds, as the bonds of Admiral Graves alone : for, notwithstanding they were executed by Lady Graves, as well as the Admiral, yet being a. feme covert, the bonds, as to her, were absolulely void, and must be regarded in law as the bonds of Admiral Graves alone. The fraud, if any, according to the proof, was committed by both Admiral and Lady Graves. It is difficult to conceive of any adequate motive on the part of parents, to commit such a fraud, and more especially, on the part of the mother. But I think, that it would be difficult to make out the existence of a legal fraud in this case, it is possible, and Í think that is made out by the proof, that Admiral and Lady Graves, did represent that their daughters fortunes were secured by the deed of 1815, when, in fact, that deed had been revoked. So far, this was a misrepresentation, which, if it had deprived the defendant, Sir James, of any benefit, might have been a fraud. But according to that deed, he could have acquired no right to demand his wife’s portion, until after the death of both Admiral and Lady Graves ; and during their joint lives, they possessed an unlimited power of revocation. So that Sir James could have sustained no damage by the revocation of that deed, before his marriage, although he Jfiighf, at his *228 marriage, have been induced by Admiral and Lady Graves, to be-., ijieve it to be unrevoked.
On the face of the bonds, it is obvious, that they were not intended for any other purpose than as securities for Lady Colleton’s fortune, which her parents supposed they were able to give to her. The first speaks in terms of the six thousand pounds, as the fortune of Lady Colleton ; and not as a fortune due to her befor® marriage; but as a fortune which her parents, after marriage, say,. “ we promise to give our said daughter.” This bond asserts, that this sum was settled on lands in South Carolina, with a power of revocation in Admiral and Lady Graves, and Admiral and Lady Graves, in terms, bind themselves to give up that power. This bond; it cannot, surely, be pretended, is a satisfaction for a misrepresentation, previous to marriage, about the daughter’s fortune, when it speaks of a present, and not a past, promise, to give; and when it sets out as true, the very facts charged as a misrepresentation, and moieover binds the Admiral and his lady, not to revoke a deed which had been revoked three years. It it was accepted by Sir James and Lady Colleton, it would negative the existence of a misrepresentation, as to the daughter’s fortune before marriage. The second is a money bond, and is payable to Sir James and Lady Colleton. This fact shews that it could'not have been intended as a satisfaction of a fraud committed on Sir James. If it had been, it would have been payable to him alone. It, as well as the former bond, fairly point to foe wife’s fortune, as the matter intended to be thereby secured,
2d. If, however, it be conceded that these bonds were executed in satisfaction of the misrepresentation of Admiral aud Lady Graves, to Sir James, before his marriage, that their daughter’s fortune was secured by the deed of 1815, which was uurevoked, and that this constituted a legal fraud, still Í apprehend, that the deed of 1821, fcannot be sustained as against these complainants. These matters which are conceded, cannot place the deed of 1821, upon any higher Or other ground than that of 1815. It will, as I conceive; stand precisely upon foe footing, as if that deed had been ’unrevoked, and in 1821, Admiral and Lady Graves had recited it, and had directed that Lady Colleton’s portion should be charged upon the slaves. For the fraudulent misrepresentation (if it be so,) can only as against Admiral Graves, set up that deed. In equity, the party making such a misrepresentation, will be held to it, as if-true. In Landon vs. Morris, 5 Sim. 247, (6 Con. Eng. Chan. Rep. 410,) the plaintiff previous to his marriage with the daughters *229 of John Ready, wrote to be informed what provision Mr. Ready intended to make for his daughter; he replied in writing, that he was at that time unable to give up more than a house at Bath, and & freehold estate in Cheshire, called Coppenhail, and that another estate called Oakhanger Hall, and three houses in Lime street, London, were entailed on Ins daughter after his decease. Mr, Ready, at the marriage of the plaintiff and his daughter, was a widower : he subsequently married, and died leaving his widow and daughter surviving him. By his will, he left all his estate, real and personal, to his widow. It was found after liis death, that of the houses in Lime street, London, Mr. Ready, under the will of Susannah Weedon, was tenant in tail male, with the immediate reversion to himself in fee. It was held that the letter was to be considered as, or in the nature of the marriage articles : and that the plaintiffs were entitled to have it-and the proposal therein con. tained carried into execution, and to have the houses conveyed to Mrs. Landon conformably to the representations contained in the letter, and that the plaintiffs were entitled to the possession of the bouses, and to the rents and profits thereof, from the death of Mr, Ready. That case and this are alike in every respect, except that the misrepresentation there was by letter in answer to an inquiry, as to the provision which the father intended to make. So far, that is much the strongest case, and the letter there was considered as articles before marriage, and as such the party was bound by them. But the analogy of the ease to this is in tho misrepresents, lion there, that the houses were entailed on his daughter : and hero, that a deed existed which had been revoked. In 6 Ves. 182, the Lord Chancellor says, “ it is a very old head of equity that if o representation is made to another person, going to deal in a matter of interest upon the faith of that representation, the former 'shall make that representation good.” - It is hence, unquestionable that Sir James is entitled as against Admiral Graves, to set up the deed .of 18 L5. But it is another question, whether that deed can be ah lowed to defeat the rights of the complainants. It is, as Í think, perfectly clear that it cannot : and if it cannot, the deed of 1821, as against them, cannot stand. For it in this respect, and on this point of the argument, depends on .the deed of 1815. it must be remembered that Admiral Graves, in 181.4, was- deeply indebted ; that one of the debts then due, six thousand pounds with its accruing interest, is unpaid. The deed of 1815, was purely voluntary : a mere family arrangement. Stopping here, it must, according to Izard and Izard, and the former opinion in this very case, *230 be adjudged void. But when its provisions are adverted to, where» by the use in the lands and slaves are reserved to the use of the grantors for life, with a general and discretionary power of appointment in remainder, and a sweeping power of revocation at will, it never could have borne an argument, that such a deed was not to be adjudged covinous and void against creditors. According to this view, the misrepresentation of Admiral Graves would not help the defendant Colleton, against the complainants. 1 have given the utmost legal effect to it. For it cannot be, that because Admiral and Lady Graves said their daughter’s fortune was secured by the deed of 1815, that this declaration should have an effect beyond that deed. To say so, would be to give a verbal declaration the same effect, as written articles, and to repeal the statute of frauds and perjuries. In Montacute vs. Maxwell, 1st Pr. Wms. 618, which was a bill by the wife against her husband ; be had before marriage promised her, that she should enjoy her own estate to her separate use, and had agroeed to execute writings to that purpose, and had instructed counsel to draw such writings : when they were about to be married, the writings not being perfected, the defendant desired that this might not delay the match, but engaged upon bis honor, that she should have the same advantage of the agreement as if it wore in writing, drawn in form by counsel, and executed ; upon which the marriage took effect, and afterwards, in reply to a letter from the plaintiff reminding him of his promise, he wrote her a letter, saying, that ho was always willing, she should enjoy her fortune, as if sole, and that it should be at her command. The defendant pleaded the statute of frauds and perjuries, and Lord Chancellor Hard wicke, sustained the plea upon the ground, that the plaintiff’s waiver of the execution of (he arth cles, was from her reliance on the plaintiff’s word and promise, which by the statute was void : and that the letter did not recite or promise the performance of the agreement. That case was, I think, much stronger for the plaintiff than this : the execution of the articles there was prevented by the assurance of the defendant. Here no articles were prepared : no settlement was demanded, the defendant relied upon an assurance, that in 1815, a deed was executed, which secured his wife’s portion. So far as the existence of the deed was concerned, he has been allowed the full benefit of the misrepresentation : but as to the security of the portion, he relied upon the opinion of Admiral and Lady Graves, instead of examining the registry of the deed. Their representation that the fortune, was secured, cannot have a greater effect than their pvo- *231 fíúse to make it secure, which according to Montacute vs. Maxwell, would be void by the statute oí frauds and perjuries.
if, however, the deed of 1821, is to be considered independent of its connection with that of 1815, thon it can only be sustained fay shewing that the lien which it gave to Lady Colleton, was in consideration oí articles before marriage. For, until this was done, the- settlement, or conveyance would be post-nuptial and voluntary, and void as against creditors. This view is sustained by the former judgments, on that part of this case, which passed upon the rights of Baron Vandersmissen and lady : and by the case of Izard vs. Izard.
But it is said that the bonds were in consideration of the previous verbal promise to secure the fortune of Lady €oHeton,>afld that this was a valuable consideration, and hence that the deed would be good. But if even this was so, i think that the deed must still fail. For that deed is upon the trust that the grantors, Admiral and Lady Graves should have the use, benefit, and profit of the slaves during their joint lives and that of the survivor. This trust renders that deed covinous and void as against creditors : and being illegal on this account, it cannot be helped by the supposed valuable’ consideration. ' It is, however,- unnecessary to pursue this view : for the proposition of the defendant, Sir James, that the verbal promise to secure the fortune of Lady Colleton can sustain the bonds, is unten able In the first place the bonds do not recite any such verbal promise, and according to Read vs. Livingston, 3 J. C. R. 492, notwithstanding an ante-nuptial verba) agreement was proved, they must be regarded according to their execution, as post-nuptial and voluntary.
In the second place, a parol promise in consideration of marriage is void : bonds and deeds executed in conformity thereto, after marriage, are merely gratuitous and must as voluntary securities and conveyances, be postponed to creditors. 12 Ves. 73, 74. 3 J. C. R. 481.
But a third objection is to my mind decisive of the whole case ; all proof of a verbal promise before marriage, is inadmissible and cannot be heard. When the statute is pleaded or interposed, as an objection to hearing the proof, as in this case, it must be first decided on : and if the case made, or proposed to be proved is within the statute, the evidence is not heard. In this case, that objection niust exclude all the proof beyond the fact, that Admiral and Lady - Graves represented the deed OÍ 1815, as u»r§Ybked, when in fact it was revoked.
*232 Filed 9th September, 1836.
It is ordered and decreed.; that Chancellor DesattssttRe’s decree' be affirrrfed.
JOHN B. O’NEAL L.
We concur,
JOSIAH J. EVANS,
A. P. BUTLER,
B. J. EARLE,
DAVID JOHNSON.
Í concur in the result.
J, JOHNSTON
Gantt, J. absent in the Circuit Court,